**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN HART,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KATHRYN GORDON,** | : | |
| *Defendant.* | : | **NO. 14-cv-03097** |

<u>**MEMORANDUM**</u>

**KENNEY, J.**                                                                              **December 9, 2024**

In November 2011, Laura Selvage contacted the Philadelphia Police Department and alleged that after she ended a brief romantic relationship with John Hart, Hart began harassing and stalking her. Based on Selvage's detailed allegations, Detective Kathryn Gordon drafted an affidavit of probable cause, which charged Hart with stalking, harassment, and related offenses. The Philadelphia District Attorney's office, as well as a magistrate judge, then reviewed and approved the affidavit, and Hart was arrested (the "<u>Selvage case</u>"). Hart ultimately succeeded in getting the Selvage case dismissed for lack of jurisdiction, and separately filed this pro se civil action. In this case, Hart asserts a tort claim and a number of constitutional claims against Detective Gordon pursuant to 42 U.S.C. § 1983. The gravamen of Hart's claims is that Detective Gordon arrested him for crimes without probable cause. *See generally* ECF No. 28.

Presently before the Court are the parties' cross motions for summary judgment, which are ripe for disposition. For the reasons detailed below, the Court will grant Defendant's Motion for Summary Judgment (ECF No. 38) and deny Plaintiff's Motion for Summary Judgment (ECF No. 37). An appropriate order will follow.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

On November 16, 2011, Plaintiff John Hart was arrested at his residence in Havertown, Pennsylvania involving victim Erika Von Tiehl (the "Von Tiehl case").[1]  ECF No. 38-1 ¶¶ 2, 6; ECF No. 38-7 at 2.  That same month, Detective Gordon was contacted by victim Laura Selvage, who lives in Baltimore, Maryland.  ECF No. 38-1 ¶ 10; ECF No. 37 at 6.  On November 20, 2011, Selvage provided Detective Gordon with a statement.  ECF No. 38-1 ¶ 11; ECF No. 38-10; ECF No. 37, Ex. 1 (Gordon Dep.) at 15:2–16.  Selvage alleged that after she went on a few dates with Hart and decided to end things, the following events occurred:

- Hart called Selvage 30 times back-to-back the day after Selvage broke it off.  *See* ECF No. 38-1 ¶ 11; ECF No. 38-10.

- On March 26, 2011, Hart sent Selvage a number of texts, and grew increasingly angry when Selvage did not respond.  *See* ECF No. 38-1 ¶ 11; ECF No. 38-10; ECF No. 38-15 (Prelim. Hr'g) at 49:15-19, 51:2–17.

- In April 2011, Selvage noticed that her email accounts, including her Hotmail, Yahoo, and Towson University accounts, had been "hacked."  Her Hotmail account had sent a virus to all of her contacts.  Her Towson University email account showed that it was last accessed by IP address 76.99.58.223, which was traced to an apartment building called "Executive House" in Philadelphia, Pennsylvania.[2]  *See* ECF No. 38-1 ¶ 11; ECF No. 38-10; ECF No. 37 at 7.

---

[1]    The underlying facts of and charges in the Von Tiehl case are irrelevant for the Court's purposes.  The Von Tiehl case is relevant to this case only insofar as it helps establish the timeline showing when Hart was in custody. When Hart was arrested in the Von Tiehl case on November 16, 2011, he violated parole in another case.  ECF No. 38-1 ¶¶ 6-9; ECF No. 38-7 at 3; ECF No. 38-9 at 10:4–16; ECF No. 38-9 at 11:4–15.  Because he was in violation of his parole, he was detained pending the outcome of the Von Tiehl case.  ECF No. 38-1 ¶¶ 7-9; ECF No. 38-9 at 11:4–15, 26:19–27:1.  He was not sentenced in the Von Tiehl case until May 26, 2016.  ECF No. 38-1 ¶ 23.  Thus, Hart was already in custody on the Von Tiehl case at the time he was arrested in the Selvage case (May 29, 2012) and remained in custody on the Von Tiehl case until the charges in the Selvage case were dropped (May 26, 2016).

[2]    Officer Brian DeHart, a police officer for the Baltimore County Police Department, determined that the IP address traced to Executive House in Philadelphia.  ECF No. 38-4 at 7.

- In April 2011, Selvage received a call from a T-Mobile representative.  The representative told Selvage that a male using a woman's voice called from a payphone in Havertown, Pennsylvania—Hart's hometown—and tried to gain access to Selvage's account.  *See* ECF No. 38-1 ¶ 11; ECF No. 38-10.

- On April 22, 2011, Selvage received a temporary peace order against Hart in Baltimore, Maryland, although the judge did not enter a final peace order.  *See* ECF No. 38-1 ¶ 11; ECF No. 38-10.

- On May 12, 2011, Selvage received a number of calls from various businesses, including one from a Piercing Pagoda.  When she spoke to a store clerk at Piercing Pagoda, the store clerk stated that a man matching Hart's description was trying to call Selvage.  *See* ECF No. 38-1 ¶ 11; ECF No. 38-10.

- That same day, Selvage received multiple phone calls from a Verizon store.  When she answered the phone in one instance, the Verizon store representative stated that someone was trying to contact her, and described a man matching Hart's description.  In another instance, Selvage heard Hart's voice in the background asking to borrow a pen.  *See* ECF No. 38-1 ¶ 11; ECF No. 38-10.

On April 3, 2012, Detective Gordon submitted an affidavit of probable cause for Hart's arrest to the District Attorney's office.  ECF No. 38-1 ¶ 12; ECF No. 38-4 at 6–7; ECF No. 37 at 8.  In the affidavit of probable cause, Detective Gordon relied upon Selvage's witness statement, including all of Selvage's allegations summarized in the above bullet points.  ECF No. 38-4 at 6–7; *see* ECF No. 37 at 8.  Detective Gordon also indicated in the affidavit that although Selvage received a temporary peace order on April 22, 2011 against Hart in Maryland, it was not finalized.  *See* ECF No. 38-4 at 6 ("On 4/22/11 the complainant was granted a temporary [p]eace order against John Hart, which was issued in Maryland and rejected on 4/29/11.").  Additionally, Detective Gordon indicated that Executive House had a computer room, and guests were permitted to use the computers in that room, which had Internet access.  *Id.* at 7.

─────────────

Additionally, materials in a different case against John Hart involving another complainant indicated that this IP address traced to Executive House.  *Id.*

Before drafting the affidavit of probable cause, a forensic examiner searched through all of Hart's electronic devices for evidence of the IP address that traced back to Executive House. ECF No. 37, Ex. 1 (Gordon Dep.) at 34:7–35:23. The forensic examination revealed no evidence of the IP address on Hart's devices, although Detective Gordon testified that she did not remember whether she spoke to the examiner. *Id.* at 34:1–6; ECF No. 38-15 at 68:14–69:5. Additionally, before drafting the affidavit, Detective Gordon did not subpoena documents to confirm the veracity of Selvage's allegations. ECF No. 37, Ex. 1 (Gordon Dep.) at 7:4–7:20. Furthermore, although Detective Gordon included in the affidavit that the temporary peace order was not finalized, she did not investigate why it was not finalized. *Id.* at 19:4–19:7. Detective Gordon also did not subpoena Towson University to verify Selvage's allegations that her university email account was hacked or ever accessed by that IP address. *Id.* at 49:6–15. Finally, Detective Gordon did not have any evidence that Hart was ever at Executive House or ever used IP address 76.99.58.223. *Id.* at 9:15–20. Detective Gordon did not include any of this information in the probable cause affidavit. ECF No. 38-4 at 6–7.

After reviewing the affidavit of probable cause, the District Attorney's Office approved the following charges against Hart: (1) identity theft, (2) unlawful use of a computer, (3) disruption of service, (4) possession of an instrument of crime, (5) stalking, and (6) harassment. *Id.* at 5. The charges were then reviewed and approved by Magistrate Judge Francis Rebstock, who issued a warrant for Hart's arrest. ECF No. 38-11. On May 29, 2012, Hart was arrested on these charges. ECF No. 38-1 ¶ 15; ECF No. 38-12. At the time of his arrest, Hart was already in custody on the Von Tiehl case. ECF No. 38-1 ¶ 15; *see* ECF No. 38-13.

On November 19, 2012, the District Attorney's office presented the testimony of Ms. Selvage and Detective Gordon at a preliminary hearing before Judge Bradley Moss in the

Philadelphia Municipal Court (Case No. MC-51-CR-0021954-2012).  ECF No. 38-15 (Tr. of Prelim. Hr'g).  During the preliminary hearing, Detective Gordon testified that she had "no evidence of [Hart] ever being at the [] Executive House." *Id.* at 69:11–22.  She testified that she had no evidence that any of Hart's electronic devices ever accessed IP address 76.99.58.223, *id.* at 69:16–70:3, and explained that there was a computer room at Executive House that could be used by tenants or guests, *id.* at 64:23–65:18.  She also testified that in determining that the 76.99.58.223 IP address traced to Executive House, she relied on subpoena results obtained by a Baltimore police officer in Selvage's restraining order case against Hart.  *Id.* at 59:10–60:17, 64:18–20.  After the hearing, Judge Moss held over the charges against Hart.  *Id.* at 76:20–23; ECF No. 38-1 ¶ 17; *see* ECF No. 38-3 at 2, 7.  On January 22, 2013, the Selvage and Von Tiehl cases were linked together for prosecution.  ECF No. 38-1 ¶ 18.

On April 17, 2014, Judge Bright in the Philadelphia Court of Common Pleas held a motions hearing, during which Hart raised his motion to dismiss the Selvage case for lack of jurisdiction.  ECF No. 38-1 ¶¶ 19–20.  On May 26, 2016, Judge Bright granted Hart's motion to dismiss the Selvage case for lack of jurisdiction.  *Id.* ¶ 24; ECF No. 37 at 9; ECF No. 38-3 at 46.  On that same day, after being found guilty on the Von Tiehl case, Hart was sentenced to 2.5 to 5 years of imprisonment.  ECF No. 38-1 ¶ 23.  Thus, although Judge Bright granted Plaintiff's motion, Hart remained in prison on the Von Tiehl case.  *Id.* ¶ 25; ECF No. 38-13 at 54–57; *see also* ECF No. 38-18.

### B. Procedural History

On May 28, 2014, Plaintiff Hart filed a pro se Complaint against four defendants: Kathryn Gordon, John P. O'Neil, Brian DeHart, and Laura Selvage.[3]  ECF No. 1.  Defendant Detective Gordon answered Hart's Complaint, ECF No. 6, while Defendant O'Neil sought to dismiss all of Hart's claims against him and moved to stay this case during the pendency of the Selvage case in the Philadelphia Court of Common Pleas, ECF No. 5.  On November 24, 2014, the Court granted Defendant O'Neil's Motion to Dismiss, stayed the remainder of the case until the conclusion of the Selvage case, and placed the case in civil suspense.  ECF No. 9.  On August 17, 2022, John Hart withdrew his Complaint against Defendants Brian DeHart and Laura Selvage.  ECF No. 18. On October 23, 2022, Hart filed an Amended Complaint naming Detective Gordon as the only defendant.  ECF No. 28.  In his Amended Complaint, Hart named the following five counts against Detective Gordon:  Violation of 42 U.S.C. § 1983 (Count I); False Arrest/False Imprisonment (Count II); Abuse of Process (Count III); Intentional Misrepresentation (Count IV); and Malicious Prosecution (Count V).  ECF No. 28.  On November 1, 2022, Detective Gordon answered Hart's Amended Complaint, and included qualified immunity as an affirmative defense.  ECF No. 29.

On August 31, 2022, Detective Gordon filed a status report informing the Court that all of Hart's related criminal cases had concluded, although Hart remained incarcerated.  ECF No. 21. On September 1, 2023, the case was reassigned from Judge Robreno to the undersigned.  ECF No. 33.  On January 25, 2024, the parties submitted a joint status report indicating that they were prepared to move forward with summary judgment.  ECF No. 35.  As a result, on January 30,

---

[3]    Plaintiff sued Defendant John P. O'Neil in his individual and official capacity as an assistant district attorney for the Philadelphia District Attorney's office, and Defendant Brian DeHart in his individual and official capacity as a police officer for the Baltimore County Police Department.  *See* ECF No. 1 ¶¶ 3, 4; ECF No. 5.

2024, the Court removed this case from suspense and issued a scheduling order. ECF No. 36. Following the conclusion of fact discovery on May 1, 2024, in early June 2024, the parties filed cross motions for summary judgment. ECF Nos. 37 and 38. On June 17, 2024, Hart and Detective Gordon each filed Responses. ECF Nos. 39, 40. On June 28, 2024, Detective Gordon filed a Reply in support of her Motion for Summary Judgment. ECF No. 41. Accordingly, both motions for summary judgment are now ripe for disposition.

## II.    <u>LEGAL STANDARD</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Therefore, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Owens Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation

omitted) (emphasis removed); *see also* Fed. R. Civ. P. 56(c)(1).  The non-movant must show more

than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears

the burden of production, *Anderson*, 477 U.S. at 252, and may not "rely merely upon bare

assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965,

969 (3d Cir. 1982), or arguments made in briefs, as those "are not evidence," *Jersey Cent. Power*

*& Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

When determining the existence of a genuine issue of material fact, a court must "examine

the evidence of record in the light most favorable to the party opposing summary judgment[] and

resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d

Cir. 2007).  The court need only decide whether "a fair-minded jury could return a verdict for the

plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252.  "Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

issue for trial'" and the court should grant summary judgment in favor of the moving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## III.    DISCUSSION[4]

Hart's Amended Complaint contains five counts against Detective Gordon:  Violation of

42 U.S.C. § 1983 (Count I);[5] False Arrest/False Imprisonment (Count II); Abuse of Process (Count

---

[4]     In her Motion for Summary Judgment, Detective Gordon raises the affirmative defense of qualified immunity. ECF No. 38 at 15–16. However, because the Court concludes that no reasonable jury could find for Plaintiff on the merits of any of his claims, it need not address whether Detective Gordon is entitled to qualified immunity.

[5]     In his Amended Complaint, Hart brings a general Section 1983 Claim (Count I), which appears to mimic his False Arrest (Count II), Abuse of Process (Count III), and Malicious Prosecution (Count V) claims.  It is unclear whether Hart is asserting both tort claims under Pennsylvania law and constitutional violations under § 1983 for those counts, or is simply attempting to assert constitutional violations under § 1983.  However, given Hart's exclusive focus

on federal claims and federal law and his failure to raise any state tort claims in his Opposition to Defendant's Motion for Summary Judgment (ECF No. 40) and his own Motion for Summary Judgment (ECF No. 37), the Court will construe the Amended Complaint to assert only § 1983 claims for false arrest, abuse of process, and malicious prosecution.  That said, even if the Court were to construe Plaintiff's Amended Complaint as stating tort claims for false arrest, abuse of process, and malicious prosecution, those claims would not survive summary judgment on the merits or under the Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa.C.S.A. § 8541 *et seq.*

Summary judgment would have been granted to Defendant on a false arrest claim under Pennsylvania law, because, as described above, Plaintiff's arrest was supported by probable cause. *See Braswell v. Wollard*, 243 A.3d 973, 979 (Pa. Super. Ct. 2020) (stating that the elements of false arrest are "(1) the detention of another person (2) that is unlawful"); *Alleyne v. Pirrone*, 180 A.3d 524, 543 (Pa. Commw. Ct. 2018) (explaining that an arrest based upon probable cause is a lawful arrest).

Summary judgment would also have been granted to Defendant on an abuse of process claim under Pennsylvania law.  This is because Hart has adduced zero evidence showing that Defendant used a legal process to accomplish a purpose for which the process was not designed. *See Rosen v. American Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (explaining that to establish an abuse of process claim under Pennsylvania law, a plaintiff must show that "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed[,] and (3) harm has been caused to the plaintiff" (citation omitted)).

Additionally, because a malicious prosecution claim under Pennsylvania law has the same first four elements of a Fourth Amendment malicious prosecution claim brought under § 1983, any malicious prosecution claim under Pennsylvania law would fail for the same reasons Plaintiff's § 1983 malicious prosecution claim fails.  *See Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) (applying Pennsylvania law).

Finally, even if summary judgment was not appropriate on the merits, Detective Gordon would be immune to these claims in her official capacity under the Tort Claims Act because she did not act with actual malice or willful misconduct.  *See* ECF No. 29 (Answer) at 7–8 (asserting the Tort Claims Act as a Second Affirmative Defense); 42 Pa. C.S.A. §§ 8541 (providing immunity to employees of local agencies "for any damages on account of any injury to a person"), 8542(a)(2) (abrogating immunity for individual employees whose "acts or conduct . . . constitute[] a crime, actual fraud, actual malice or willful misconduct").

III); Intentional Misrepresentation (Count IV); and Malicious Prosecution (Count V).  As detailed

below, the Court will grant summary judgment in favor of Detective Gordon on all of Hart's claims

because, on this record, a fair-minded jury could not return a verdict for Plaintiff on any count.

### A.  False Arrest/False Imprisonment (Count II)[6]

To bring a claim for false arrest under § 1983, "a plaintiff must establish '(1) that there was

an arrest; and (2) that the arrest was made without probable cause.'"  *Harvard v. Cesnalis*, 973

F.3d 190, 198–99 (3d Cir. 2020) (citation omitted).  Although it is undisputed that Hart was

arrested, Hart's false arrest claim still fails because no reasonable jury could find a lack of probable

cause.  Hart's false arrest claim also fails because he was already in custody at the time of his arrest

in the Selvage case.

### i.  There was probable cause for Hart's arrest.

In his Motion for Summary Judgment and opposition to Defendant's Motion for Summary

Judgment, Hart argues that Detective Gordon "manufacture[d]" probable cause by making

"several . . . omissions in her affidavit of probable cause."[7]  ECF No. 37 at 9; *see* ECF No. 40 at

---

[6]    Although Plaintiff asserts a claim for both false imprisonment and false arrest under federal law, *see* ECF No. 28 at 5, there may be a claim under § 1983 for false imprisonment only where the police lack probable cause to make an arrest, *see Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (distinguishing a false arrest claim from a false imprisonment claim and explaining that "[i]f the jury found in plaintiffs' favor on the false arrest claim, it could also find that Groman suffered a violation of his constitutional rights by virtue of his detention pursuant to that arrest").  Accordingly, Plaintiff's § 1983 false imprisonment claim fails for the same reason his § 1983 false arrest claim fails:  there was probable cause for his arrest.  *See supra* Section III(A)(i).

[7]    Plaintiff also argues that Detective Gordon manufactured jurisdiction.  *See* ECF No. 37 at 24.  That claim is neither here nor there.  For one, Plaintiff confuses probable cause with jurisdiction.  Probable cause asks, in essence, whether the totality of circumstances supports a finding that there is a fair probability that Plaintiff committed an offense.  *See Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467–68 (3d Cir. 2016); *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000).  It is not contingent upon proper jurisdiction, and none of Plaintiff's claims for relief here can be granted on the basis of a lack of jurisdiction.

4. More specifically, Hart presents a list of nine purported omissions that he believes should have been included in Detective Gordon's affidavit:[8]

> (1) Detective Gordon found no evidence that Plaintiff was ever at Executive House;
> (2) Detective Gordon found no evidence that Plaintiff ever used IP address 76.99.58.223;
> (3) Detective Gordon found no evidence that the same IP address from Executive House was used in the case assigned with a separate complainant;
> (4) Detective Gordon found no evidence that Plaintiff canceled or reset any of the complainant's accounts, or sent the complainant any anonymous text/email messages;
> (5) Detective Gordon found no evidence on any of Plaintiff's electronic devices linking him to the crimes that Ms. Selvage alleged;
> (6) Detective Gordon did not interview or contact any person listed in the affidavit of probable cause besides Ms. Selvage;
> (7) Detective Gordon did not make any attempt to learn why Ms. Selvage's request for a final restraining order was dismissed by the presiding judge;
> (8) Detective Gordon did not contact anyone from Towson University or subpoena records from them to verify that Ms. Selvage's school email account was "hacked" or accessed by someone using IP address 76.99.58.223; and
> (9) Detective Gordon did not issue any subpoenas to verify any of the information contained within her affidavit of probable cause.

*See* ECF No. 37 at 24.

To prevail on this theory, Plaintiff must show that (1) Detective Gordon "knowingly and deliberately, or with a reckless disregard for the truth, made . . . omissions that create a falsehood in applying for a warrant"; and (2) that "such statements or omissions [were] material, or necessary, to the finding of probable cause." *Wilson*, 212 F.3d at 786–87. Here, Detective Gordon did not act with a reckless disregard for the truth when she did not include Hart's nine purported omissions in her affidavit. Even if she did, none of Hart's omissions were material to a finding of probable cause.

---

[8]    Hart labels his nine items as "misstatements and omissions." ECF No. 37 at 24. The Court treats all as omissions, as none appear to be affirmative misstatements.

### a. Detective Gordon did not act with a reckless disregard for the truth.

"[O]missions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Id.* at 788 (citation omitted). "Inherent in this inquiry are two requirements." *Dempsey*, 834 F.3d at 471. "First, the officer must have knowledge of the information alleged to have been recklessly omitted." *Id.* "Second, the information must be relevant to the existence of probable cause." *Id.* In short, an officer must include evidence in a probable cause affidavit "if a reasonable person would know that it *could* affect the probable cause determination." *Id.* at 471 n.9 (emphasis in original).

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson*, 212 F.3d at 789 (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). When evaluating "probable cause at the summary judgment stage, [the Court] must assess probable cause based upon the 'totality-of-the-circumstances' available to the arresting officer and view those circumstances in the light most favorable to [Plaintiff]." *Harvard*, 973 F.3d at 200 (citing *Dempsey*, 834 F.3d at 467–68 (citation omitted)). And once a law enforcement officer determines the existence of probable cause, she is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in [her] mind, already existed." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000) (citations omitted).

Here, no reasonable person would have known that any of the items on Hart's list could affect a probable cause determination. That is because, even assuming Detective Gordon had knowledge of each of the items on Hart's list, none of them were relevant to the existence of probable cause. When Detective Gordon drafted her affidavit of probable cause, she relied upon

Selvage's allegations, which pointed to a pattern of harassing and intrusive behavior by Hart. For instance, Selvage reported that Hart had called her 30 times back-to-back the day after Selvage broke up with Hart. *See* ECF No. 38-10. She also alleged that Hart sent her numerous texts and grew increasingly angry when she did not respond. *See id.* Selvage further alleged that she received calls from multiple stores, and in one instance, she overheard Hart's voice in the background. *See id.* In two other instances, she spoke to the store representative, who said that a man who matched Hart's description was trying to call her. *See id.* Selvage also alleged that she received a call from a T-Mobile representative, who told her that someone with an area code from Havertown, Pennsylvania—where Hart lived—attempted to access her account. *See id.* The month prior, Selvage also noticed that her Hotmail, Yahoo, and her Towson University email accounts were "hacked." *See id.* Based upon the facts and circumstances available to Detective Gordon, even when viewed in the light most favorable to Plaintiff, these allegations were sufficient to establish probable cause for each of the crimes that Hart was charged with. *See Wilson*, 212 F.3d at 790 (explaining that statements from a victim typically suffice to establish probable cause in the absence of "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability").

Plaintiff's argument boils down to a claim that Detective Gordon should have been more thorough in her investigation. While cast as a list of "omissions," Plaintiff's list merely reflects what he views as shortcomings in Detective Gordon's investigation. But given Selvage's allegations, Detective Gordon was not required to "verify" them through subpoenas, other witness interviews, or by finding additional evidence that could exculpate Hart in order to establish

probable cause.[9]  In sum, once Detective Gordon determined that there was probable cause to

arrest Plaintiff based upon Selvage's allegations, no further investigation was required.  *See*

*Dintino v. Echols*, 243 F. Supp. 2d 255, 265 (E.D. Pa. 2003) (explaining that the detective had no

duty to "exhaust every possible investigatory avenue or to negate every possible theory that may

have exculpated the plaintiff"); *see, e.g.*, *Carson v. Aurand*, 837 F. App'x 121, 123–24 (3d Cir.

2020) (rejecting the petitioner's argument that probable cause was lacking because Detective

Aurand relied solely on the victim's allegations and arrested Petitioner without obtaining DNA

evidence and interviewing additional witnesses).

### b. None of Hart's purported "omissions" are material to a finding of probable cause.[10]

Moreover, none of Hart's nine enumerated "omissions" were material or necessary to the

finding of probable cause, as none of them undermine Selvage's allegations.  *See Dempsey*, 834

---

[9]    District courts within the Third Circuit have consistently held that a law enforcement officer does not act with reckless disregard for the truth by failing to continue an investigation after establishing probable cause. *See, e.g.*, *Jackson v. City of Philadelphia*, No. 19-CV-1372, 2020 WL 7181056, at *9 (E.D. Pa. Dec. 7, 2020) (holding that because probable cause had already been established by the victim's statements, reports, and injuries, the law enforcement officer was not required to undertake a more exhaustive investigation, such as reviewing additional communications between the parties, obtaining camera footage of the alleged event, or obtaining statements from other witnesses); *Casselli v. City of Philadelphia*, No. CV 13-6279, 2016 WL 6082635, at *6 (E.D. Pa. Oct. 18, 2016) (rejecting the plaintiffs' argument that "Detective Holman's failure to uncover certain exculpatory information reveals a reckless disregard for the truth" because "[a] decision not to continue to gather information once probable cause exists is not a constitutional violation"); *Newsome v. City of Newark*, 279 F. Supp. 3d 515, 536 (D.N.J. 2017) (holding that where an officer had already established probable cause based on a reliable positive identification from a victim-witness and other corroborating evidence, he was not required to undertake further investigation to validate probable cause or uncover potentially exculpatory evidence).

[10]    The Court recognizes the Third Circuit's directive that "when a court determines that information was asserted or omitted in an affidavit of probable cause with at least reckless disregard for the truth, it must perform a word-by-word reconstruction of the affidavit," unless doing so would be impracticable. *See Dempsey*, 834 F.3d at 470 & n.8. Given the length of the probable cause affidavit here, the Court finds that "a word-by-word reconstruction would do more

F.3d at 477 (explaining that the materiality inquiry asks whether the "omissions were 'material, or necessary, to the finding of probable cause'" (citing *Wilson*, 212 F.3d at 787)).  For example, although Hart claims that "Detective Gordon found no evidence on any of [his] electronic devices linking him to the crimes that Ms. Selvage alleged," ECF No. 37 at 24, he may have used an electronic device that he did not own to commit these crimes—such as a payphone, or a computer available for public use.

Therefore, even if each item on Hart's list had been included in the probable cause affidavit, none of them would have affected the probable cause determination.  This is because none of them would have undermined Selvage's allegations that (i) Hart called her 30 times back-to-back the day after Selvage broke up with him; (ii) Hart repeatedly sent Selvage angry text messages; (iii) Selvage spoke to a store representative at Piercing Pagoda who stated that a man was trying to call Selvage, and when the representative described him, the man matched Hart's description; (iv) when she answered a phone call from a Verizon store after receiving multiple phone calls from that number, the Verizon representative said a man matching Hart's description was trying to

_____

to distract from than to clarify the court's holding." *Id.* at 470 n.8.  If inserted into the affidavit, Hart's omissions would directly follow Detective Gordon's statement documenting each of Selvage's allegations.  *Id.* (explaining that if the court does not provide a word-by-word reconstruction, then "the court should instead identify with particularity the evidence that should be deleted or inserted and specify where precisely in the affidavit any alterations should appear").  For instance, with respect to Hart's fifth omission, the affidavit would have read:  "On 4/4/11 [Selvage] saw that a virus had been sent to all of her contacts from her Hotmail account.  Also, that account with Hotmail sent her a message saying that her account had been change[d] to Asmith1801@hotmail.com.  The complainant did not change her Hotmail account to Asmith1801@hotmail.com.  After this, the complainant changed her Hotmail, Yahoo and Facebook accounts because they had all been hacked.  Detective Gordon found no evidence on any of Plaintiff's electronic devices linking him to the crimes that Ms. Selvage alleged."  The insertion of the last sentence would not have changed a finding of probable cause, as, under the totality of circumstances, there is still a reasonable probability that Plaintiff hacked her accounts through a device he did not own.

15

contact her; (v) it appeared that a man impersonating Selvage, who had called from Hart's hometown, was trying to access her T-Mobile account; and (vi) around the time she experienced all of this, many of her email accounts were "hacked." ECF No. 38-4 at 6, ECF No. 38-11. Those allegations are sufficient for a finding of probable cause—that is, a "'fair probability' that the [arrestee] committed the crime at issue," *Dempsey*, 834 F.3d at 477 (citing *Wilson*, 212 F.3d at 789 (citation omitted))—and no reasonable jury would find otherwise.

As a final note, the Court's conclusion that none of these purported "omissions" are material to a finding of probable cause is underscored by the outcome of the preliminary hearing. During the preliminary hearing, Detective Gordon explicitly revealed much of this information to Judge Moss, and Judge Moss still found that the Commonwealth met its burden on the charges against Hart. For example, Detective Gordon testified that she had "no evidence of [Hart] ever being at the [] Executive House." ECF No. 38-15 (Tr. of Prelim. Hr'g) at 69:11–22. She testified that she had no evidence that any of Hart's electronic devices ever accessed IP address 76.99.58.223, *id.* at 69:16–70:3, and explained that there was a computer room at Executive House that could be used by tenants or guests, *id.* at 64:23–65:18. She also testified that she relied upon the results of a subpoena procured by a Baltimore police officer in the restraining order case that Selvage initiated against Hart to find that the 76.99.58.223 IP address traced to Executive House. ECF No. 38-15 (Tr. of Prelim. Hr'g) at 59:10–60:17, 64:18–20. That Judge Moss held over the charges against Hart after being presented with these facts undercuts any argument by Hart that these omissions would have altered a finding of probable cause. *See, e.g.*, *Carson*, 837 F. App'x at 123 (affirming district court's denial of claim that Detective Aurand initiated proceedings without probable cause through reckless or material omissions in the arrest warrant in part because the record showed that the detective acknowledged the alleged omissions during the preliminary

hearing); *Corliss v. Lynott*, No. 3:15-cv-01364, 2016 WL 625071, at *8 n.8 (M.D. Pa. Jan. 5, 2016) ("While evidence of a holding over is not conclusive as to probable cause, an independent determination of probable cause, which was established at the preliminary hearing, constitutes weighty evidence of probable cause." (citation omitted)).

### ii. Plaintiff's false arrest claim fails as a matter of law because he was already in custody at the time of his arrest.

Plaintiff was already in custody on the Von Tiehl case at the time of his arrest in the Selvage case.  Thus, he cannot make out a claim of false arrest under § 1983 as a matter of law.  *See McCabe v. City of Philadelphia*, No. Civ.A. 01–CV–3975, 2002 WL 32341787, at *4 (E.D. Pa. Nov. 13, 2002) ("A plaintiff cannot state a claim for false arrest when he is already in custody." (citation omitted)), *aff'd*, 76 F. App'x 464 (3d Cir. 2003); *Rosario v. Lynch*, No. 2:13-CV-01945, 2017 WL 4098709, at *6 (E.D. Pa. Sept. 15, 2017) ("[A] prisoner cannot state a cognizable claim of false arrest or false imprisonment while he is already in custody for an unrelated offense."); *see, e.g.*, *Andrews v. Knight*, No. CV 17-0962, 2022 WL 16837055, at *10 (E.D. Pa. Nov. 9, 2022) ("Because Plaintiff was incarcerated during January of 2016 when he was arrested for the Aggravated Assault charge, he cannot state a cognizable False Arrest claim.").

### B.  Malicious Abuse of Process (Count III)

"[A] section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by law.'"  *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989).  Importantly, "[t]he gravamen of [a malicious abuse of process claim] is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.'"  *Dunne v. Twp. of Springfield*, 500

F. App'x 136, 139 (3d Cir. 2012) (alteration in original) (citing Restatement (Second) of Torts §
682).

Here, no reasonable jury could find for Hart on his malicious abuse of process claim.  He
has adduced no evidence showing that Detective Gordon misused a legal process for any reason
other than a legitimate purpose:  to charge Hart with crimes of stalking, harassment, and related
offenses on the basis of Selvage's allegations against him.

### C.  Intentional Misrepresentation (Count IV)

Plaintiff claims that "Defendant Gordon intentionally misrepresented information
contained in the affidavit of probable cause that she drafted, including, but not limited to, that
Plaintiff had committed crimes against [Selvage] in Philadelphia County."  ECF No. 28 ¶ 40.  In
other words, Plaintiff claims that Detective Gordon intentionally misrepresented information in
the affidavit of probable cause to the District Attorney's office and the magistrate judge—that is,
non-parties to this lawsuit—which, in turn, caused them to issue a warrant for Plaintiff's arrest.
That claim is not cognizable as a matter of law.

Typically, to establish an intentional misrepresentation claim, a plaintiff must demonstrate
the following elements:  "(1) [a] representation; (2) which is material to the transaction at hand;
(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4)
with the intent of misleading another into relying on it; (5) justifiable reliance on the
misrepresentation; and, (6) the resulting injury was proximately caused by the reliance."  *Bortz v.
Noon*, 729 A.2d 555, 560 (Pa. 1999) (citations omitted).  But "the false representation must be
intended to cause the party bringing the claim to act, not merely to influence a third party to act in
a detrimental manner."  *Deangelo Bros. v. Platte River Ins. Co.*, No. 09–1198, 2010 WL 2635983
at *9 (E.D. Pa. June 29, 2010) (applying Pennsylvania law).  Thus, "[a] plaintiff cannot state a

claim for fraud based on a third party's reliance on a misrepresentation, even when it was made to influence the third party foreseeably to act in a manner detrimental to the plaintiff." *Westwood–Booth v. Davy–Loewy Ltd.*, No. 97–7539, 1999 WL 219897 at \*4 (E.D. Pa. Apr. 13, 1999) (applying Pennsylvania law).

Here, given that Plaintiff's claim is that Detective Gordon intentionally misrepresented information in the probable cause affidavit, which was relied upon by third parties—not Plaintiff himself—Plaintiff's claim fails as a matter of law. *See, e.g.*, *Elia v. Erie Ins. Exch.*, 581 A.2d 209, 212 (Pa. Super. 1990) (finding no cause of action for fraud absent misrepresentation intended to cause *plaintiff* to act and subsequent justifiable reliance by *plaintiff*).

### D.  Malicious Prosecution (Count V)

"To prove malicious prosecution under section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007).[11] The requirements of a malicious prosecution claim are conjunctive, meaning if a plaintiff fails to satisfy even one of the five elements, his claim must fail in its entirety. *Reyes v. DiLuzio*, 495 F. App'x 219, 222 (3d Cir. 2012) (citing *Johnson*, 477 F.3d at 82).

---

[11]    Detective Gordon concedes that Hart's criminal proceeding ended in his favor, as the charges were dismissed on jurisdictional grounds. ECF No. 38 at 7.

Here, the Court could terminate this claim given its finding of probable cause as established above.  However, even if there was probable cause, summary judgment must still be granted in favor of Defendant because a fair-minded jury could not find for Plaintiff on the first, fourth, or fifth elements of this claim.

On the first element, the evidence conclusively demonstrates that Defendant did not "initiate" the criminal proceeding within the meaning federal law.  In the Third Circuit, "officers who conceal and misrepresent material facts to the district attorney" may be found to have "initiated" the proceeding.  *See Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014); *Gatter v. Zappile*, 67 F. Supp. 2d 515, 521 (E.D. Pa. 1999) ("An officer may, however, be considered to have initiated a criminal proceeding if he or she 'knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion.'" (citations omitted)), *aff'd*, 225 F.3d 648 (3d Cir. 2000).  Here, as discussed in Sections III(A)(i) and (ii) above, there is no evidence that Detective Gordon misrepresented or concealed material facts from the district attorney in the affidavit of probable cause that she drafted.

On the fourth element, there is no evidence that Detective Gordon acted maliciously, or for any reason other than to bring Hart to justice.  And aside from Hart's conclusory allegations that Detective Gordon "manufactured probable cause" and "intentionally cut corners" so that she could apprehend Hart—which are not evidence and do not, on their own, demonstrate a material dispute of fact, *see Jersey Cent. Power*, 772 F.2d at 1109–10—Hart points to none.  *See generally* ECF Nos. 37, 40.  Instead, the undisputed facts show that Selvage approached Detective Gordon and alleged a pattern of harassing and intrusive behavior by Hart, including allegations that Hart called Selvage 30 times back-to-back in one day, sent her angry text messages, and tried to call her from various stores.  ECF No. 38-10.  In reliance on all of this evidence, Detective Gordon proceeded

to draft an affidavit of probable cause for Hart's arrest.  *See* ECF No. 38-1 ¶ 11; ECF No. 38-4. None of the evidence that Hart has marshaled before the Court shows any evidence of a nefarious motive.

On the fifth element, Plaintiff did not suffer from a deprivation of liberty as required to prove liability for a malicious prosecution claim under § 1983.  When he was arrested on the Von Tiehl case on November 16, 2011, Hart was in technical violation of parole on another case, which required him to be detained pending the outcome of the Von Tiehl case.  ECF No. 38-1 ¶¶ 8-9; ECF No. 38-9 at 23:17-24, 24:1-8, 26:2-24, 27:1, 27:18-24, 28:1-3.  He was not sentenced on the Von Tiehl case until May 26, 2016.  ECF No. 38-13 at 56.  Thus, from the time Hart was arrested on the Selvage case to the time charges were dropped—that is, May 29, 2012 until May 26, 2016—he was in custody for the Von Tiehl case.  ECF No. 38-1 ¶ 23; ECF No. 37 at 9; ECF No. 38-3 at 46.  Accordingly, Plaintiff could not have suffered from a deprivation of liberty as a matter of law. *See, e.g.*, *Curry v. Yachera*, 835 F.3d 373, 379–80 (3d Cir. 2016) (finding that because plaintiff was already incarcerated before charges were brought and after they were dropped, he was not deprived of his liberty as a consequence of those charges); *Malcomb v. McKean*, 599 F. App'x 437, 438–39 (3d Cir. 2015) (holding that because "[t]he undisputed facts demonstrate that Malcomb was already in custody as a technical parole violator when he was charged with receiving stolen property," there was "no seizure as a result of the stolen property charges, Malcomb's Fourth Amendment rights were not violated, and the District Court did not err in granting the defendants' motion for summary judgment on Malcomb's [§ 1983] malicious prosecution claim").

## IV.  <u>CONCLUSION</u>

The string tying Hart's case together is his contention that Detective Gordon did not have probable cause to pursue charges against him.  But the jurisprudence that defines probable cause

does not require what Hart thinks it does. It does not require Detective Gordon to exhaust every possible investigatory avenue. It does not require her to list every piece of evidence on her affidavit that she did not acquire or corroborate. And it does not require her to validate probable cause that, in her mind, already exists. Without the law on his side, Plaintiff's string comes untied—and with it unravels his entire case.

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment in its entirety (ECF No. 38) and deny Plaintiff's Motion for Summary Judgment (ECF No. 37). An appropriate order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**